Sutliff, J.,
dissenting: The contract between a creditor and sureties is one requiring, on the part of the creditor, good faith to be exercised toward them in his dealings with the principal. Their liability, by the law of their contract, only arises upon the default of their principal. If that default occurs, on the part of the principal, under circumstances giving a right of action, for such default, to the creditor, against the principal, we all agree that the sureties are liable, by the terms of their contract, as sureties, for the damage sustained by the creditor by reason of such delinquency. The surety’s liability arises, not from the debt — for it is not his debt, he is not the debtor — but it arises from his contract merely; he has, therefore, always the right to stand upon the terms of the contract. And it has, therefore, always been held in this State, as well as elsewhere, that sureties shall not be bound beyond the scope of their undertaking; and that their liability shall not be extended, by implication, beyond the terms of their contract. Nothing can be more just and reasonable than this rule of construction. The sureties, as well as the creditor or payee, are the creditors of the principal. It is in faith of his performing, precisely as he has undertaken to do, toward the creditor, that the sureties have consented to become responsible that he shall so perform. The creditor, therefore, after *612 having obtained such bail or pledge for his so truly perform ing, must not prevent or persuade the principal from performance, and then exact his pledge or penalty from his bail for such delinquency. While the sureties entered into an express-contract to answer for damages arising to the creditor from, a delinquency of the principal to perform his undertaking to pay his debt at the time and in the manner specified in the undertaking, the creditor came into an implied contract with the sureties that he would, in nowise, prejudice their interests, or increase their hazard, by preventing or persuading the principal from performing his undertaking at the time and according to the terms expressed by his contract, and for the faithful performance of which, by the principal, the sureties have' so given the principal their confidence, and undertaken to answer for his default.
Without imputing any intentional fraud to the creditor, Rrown, in his dealings with the principal, I regard them inconsistent with the performance of this implied contract toward the sureties, on his part, which the good faith due under the contract required of him, to render them holden for the delinquency of the principal.
The contract, upon which the sureties undertook for the principal in this case, was the payment of a promissory note of three thousand dollars on demand, dated and delivered September 25, 1853. When that note was delivered, the contract was consummated. The principal undertook to pay according to the terms of the note. The sureties undertook to answer for his default in that undertaking, as thus expressed, and for nothing more. Any extension of the time of payment, by a binding contract on the part of Brown with the principal, Robison, without the consent of the sureties, we all agree, would be a discharge of the sureties in this case. Upon this point, I maintain, the evidence is clear and sufficient to show the existence of a binding contract by Brown, with Robison, to extend the time of payment; and that the sureties became thereby discharged. The finding of the court below, it is agreed, submits for our consideration upon this point only the question of an implied agreement. The facts *613 are found and presented in the record, and are, in effect, the same as a special verdict, upon the record. Do these facts, in law, constitute an undertaking on the part of Brown, for a sufficient consideration, to extend to Robison, the debtor, the time of paying the note ? It is not doubted that it was ■competent for the parties, Brown and Robison, by verbal contract, at any time after the note was delivered, to extend the time of payment named in the note, the same as if the note had been executed by Robison ,alone. Let us, then, recur to the evidence applicable to those two, as debtor and creditor.
The court -find, in substance, that Brown agreed to make the loan to Robison of* $3000, for one or more years, at the rate of ten per cent, interest, and the additional sum of sixty dollars per year, two per cent., to be paid in hand on making the loan; that Brown acceded to the proposition; that he procured the sureties to sign a note for him as principal, payable on demand, on ten per cent, interest, and presented it to Brown, without any new negotiation, and Brown accepted the same and made the*loan, and received, from the $3000, sixty dollars, the two per cent, for one year, as so agreed between the parties at the time of negotiating the loan. And that at the expiration of the year, Robison paid the ten per cent, interest expressed in the note, $300, and also, $60, as two’ per cent, extra interest for another year’s extension, which was also so received by Brown.
Now, I do not say that the terms of the loan, and delay of payment verbally expressed and agreed upon before the delivery of the note, could at all vary or qualify the express terms of the note. Upon receipt of the note, Brown might have refused the execution of the verbal contract for delay, ■and not have received the two per cent, for such delay, and at once have commenced suit upon the note. I only make reference to this former verbal agreement to explain the acts of the party in execution of it after the delivery of the note. The bare fact that after the execution and delivery of the note, Robison paid Brown $60, would be of itself, I grant, quite unimportant; but when it is proved that Robison paid *614 it, and Brown received it in consideration of an extension of time on the note, it then becomes very material.
Now in this case, the proof is, that Brown promised Robison that, for a note drawing ten per cent, interest, and twe per cent, in hand paid, he, Brown, would extend the time of payment of the loan, for one year. The note was delivered by Robison, but not expressing the agreement for delay of payment. The terms proposed by Brown, were simply these: I lend my money on a note, drawing ten per cent., of this-form, with the right to collect the same at any time within the year; price of that right to collect within the year, is two per cent.; if the borrower shall see fit to purchase that right at such price, he can then have the right to retain the money for one year, instead of holding it only upon liability of a present demand. This standing proposition by Brown, was unknown to the sureties, Yet, after the delivery of the note, Robison paid, in money, the two per cent, in addition to the ten per cent, note, which was a full execution of the agreement on his part, and a full payment of the price and consideration for delay promised by Brown; and this consideration was received and so held by Brown without any objection, without applying it upon the note, or in any other way accounting for the sixty dollars so paid and received. I can not imagine how it could possibly be claimed under this-proof, that if the note had been signed only by Robison,. Brown could, the next- day after so having received from him the $60, for extension of time, have maintained, successfully, a suit against him upon the note, as over due. And yet,, such a result would necessarily follow, from the opinion of my brethren in this case.
And it has never been questioned in this State, since the case of the Bank of Steubenville v. Carroll’s administrator (5 Ohio Rep. 207), that any act on the part of the creditor, which destroys or suspends his right to a present, continuing pursuit of his remedy against the principal, absolves the surety from his liability for the default of the principal.
It seems to me that while the holding in the case of McComb v. Kittridge, that a valid promise to pay interest is a good con *615 sideration for an extension of time, an actual payment and receipt of the interest ought to be. Indeed, I regard this a much stronger ease for the sureties, than that of McComb v. Kittridge, upon the ground upon which that case was decided. That case was embarrassed by the objection, that the undertaking to pay the consideration for the extension of time, was one that could not, perhaps, be enforced; and it was only by first determining that it could, that the court, finding that the creditor might thereby compel a payment of money for the extension, held that the agreement to extend the time, was supported by a consideration.
To further illustrate the application I make of the verbal agreement of the parties made before the delivery of the note, and acted upon after, let us suppose a case in which the consideration for the extension had been in part, or all, other than a payment of money, as in this case, in addition to the interest expressed in the note. If Brown had, in his verbal negotiation, proposed to Robison to accept a note payable on demand for the loan ; and also to give the further time of a year, on condition that Robison should accompany him to New York, and assist him in the transaction of certain business there, for his, Brown’s, benefit; or, in consideration that Robison should procure and deliver to him a certain article of property ; the contract in law, thus verbally made, would, in each case alike, on delivery of the note, be inoperative. But, suppose in those cases, as in this, that there had been an actual performance by Robison, and an acceptance by Brown, after the delivery of the note, and without any further express contract, can it be possible that the implied contract would not be operative upon Brown ? It seems to me it could not be doubted. And it is impossible for me to perceive wherein the present state of facts, as proved, is less conclusive.
I think the proof in this case clearly shows that the sixty dollars paid by Robison, and received by Brown, after the delivery of the note, and at the time of receiving the loan, was paid and received for an extension of time, and for no other consideration. And, again, at the end of the first year, the transaction was so regarded, treated and affirmed.by both *616 of the parties — Brown not offering, nor Robison asking to have the sixty dollars applied in any other manner. The same is true of the sixty dollars paid and received for the second year’s extension of time. And I can not consider it possible that any jury, upon this evidence, could fail to find the fact of the money having been so paid and received, if an action, immediately after the payment of either sixty, had been brought by Robison to recover it back.
I am clearly of the opinion, therefore, that Brown did, in this case, on the delivery of the note of the principal and sureties for $3,000, and making the loan to Robison, agree with him, for the consideration of sixty dollars, so then paid and received, to extend the time of payment of the note for one year. I regard the proof equally clear that, at the expiration of the first year, upon Robison’s paying him the $300 additional interest, for that year, Brown again received from Robison sixty dollars, with the implied understanding between himself and Robison, based upon his original verbal promise, and already acted upon and executed between them for one year, that he would again give Robison a like extension for the second year; and this implied contract, executed by both the parties, was, in like manner, ratified and affirmed by both, at the expiration of the second year.
I, therefore, hold that the sureties were thereby absolved from their liability upon the note; and that the judgment of the district court ought to be reversed.